**The MERCHANTS COMPANY,**
**a Mississippi Business**
**Corporation, Plaintiff,**

v.

**AMERICAN MOTORISTS INSURANCE COMPANY, a Kemper National Property and Casualty Company, Defendant.**

**Civ. A. No. H91–0169(P)(N).**

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

May 11, 1992.

Michael K. Randolph and Herman M. Hollensed, Jr. of Bryan, Nelson, Randolph, Land & Weathers Hattiesburg, Miss., for plaintiff.

Lawrence C. Gunn, Jr. of Gunn & Roberts Hattiesburg, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This cause is presently before the Court on the Plaintiff's Amended Motion for Partial Summary Judgment on the issue of insurance coverage in this action. Having reviewed the parties' briefs and being otherwise fully advised in this matter, the Court finds that the Plaintiff's motion for partial summary judgment should be granted.

### I.

### FINDINGS OF FACT

This cause is a declaratory judgment action brought by the Plaintiff, The Merchants Company ("Merchants"), seeking a declaration that coverage is available under certain policies of insurance issued by the Defendant, American Motorists Insurance Company ("American"). Merchants also seeks a declaration that American has a past and continuing duty to provide Merchants with a defense and counsel in an action in which Merchants is named as a defendant.[1] That action is pending in the Circuit Court of Montgomery County, Alabama, as Civil Action No. CV–89–2554–PR ("the Alabama action"). The Alabama action was commenced against other Defendants in December 1989. Merchants was added as a Defendant on March 22, 1990.

In regard to the insurance coverage at issue in this case, the parties have entered

into a four-page document, styled "Amended Stipulation of Facts Regarding Plaintiff's Motion for Partial Summary Judgment". That stipulation is incorporated herein by reference and need not be set forth verbatim at this juncture. Suffice it to say that the parties agree that American has written both a Commercial General Liability insurance policy ("CGL policy") and a Commercial Catastrophe Liability insurance policy ("Catastrophe policy") for Merchants. Additionally, the parties agree that after Merchants was named as a Defendant in the Alabama action, Merchants provided timely notice to American and requested that American provide Merchants with a defense. American advised Merchants that no coverage was available under the CGL or the Catastrophe policy and further advised Merchants to employ its own counsel, which Merchants has done. In this action, Merchants seeks a declaratory judgment declaring that coverage is available under the insurance policies and reimbursement from American for the sums which Merchants has expended for its defense of the Alabama action.

American's decision that no coverage is available under the policies written for Merchants was based upon its interpretation of those policies. There are several policy provisions relevant to the Court's determination of whether there is coverage under the CGL or the Catastrophe policy. The relevant provisions of the CGL policy read in relevant part:

**SECTION 1–COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies....

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insurance Agreement.**

---

**1.** Despite American's suggestion that the Court should perhaps consider the coverage question "first" and then take up the duty to defend issue, the Court considers simultaneously the question of coverage under the insurance policies and American's duty to defend.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or performs acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS–COVERAGES A AND B. We will have the right and duty to defend any "suit" seeking those damages....

c. This insurance applies to "advertising injury" only if caused by an offense committed:

(1) In the "coverage territory" during the policy period; and

(2) In the course of advertising your goods, products or services.

**Exclusions.**

This insurance does not apply to:

a. "Personal injury" or "advertising injury:"

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period....

**SECTION V–DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

*See* Exhibit 1 to Plaintiff's Amended Motion for Partial Summary Judgment. The relevant language in the Catastrophe policy—which appears to operate primarily as excess coverage over the CGL policy—is essentially identical to the language set forth above from the CGL policy. *See* Exhibit 2 to Plaintiff's Amended Motion for Partial Summary Judgment. The Court notes that Merchants paid an estimated premium of $11,866.00 for the coverage provided under the CGL and an estimated premium of $16,200.00 for the coverage provided under the Catastrophe policy.

In order to decide whether there is coverage available under either the CGL or the Catastrophe policy, it is necessary to examine the allegations set forth in the Complaint filed in the Alabama action. In this regard, the Court looks to the Amended Complaint filed on October 12, 1990, which struck the original complaint in its entirety, and to the Amendment to Complaint filed on April 29, 1991. The Amended Complaint reads as follows:

### STATEMENT OF FACTS

9. On or about February 9, 1989, Plaintiff AFD and Defendant Pepsi entered into a contract for the sale of its wholesale produce business, a part of Springford Foods, which is a division of Defendant Pepsi.

10. Pursuant to this sale and purchase agreement, Defendant Pepsi agreed to sell, assign, transfer, convey and deliver to Plaintiff the title to its customer list which had substantial value and which had been developed over the years by Defendant Pepsi and its predecessor companies.

11. No person, corporation or entity had a legal right to the customer list referred to herein, which was a trade secret, except Plaintiff AFD and Defendant Pepsi.

\* \* \* \* \* \*

18. At that time, Defendants Springford and Pepsi represented to Plaintiffs AFD and Cheek that:

(a) The customer list of Springford Foods would not be furnished or distributed to any third party unless such

third party actually purchased Springford Foods;

(b) AFD and Cheek would be kept fully informed as to the progress of any negotiations with a prospective purchaser including Merchants....

### COUNT ONE

21. Defendant Pepsi breached this contract by furnishing the customer list of Springford Foods to Merchants, a competitor of AFD.

22. Defendant Merchants, a new competitor in the AFD market, after receiving the customer list, immediately contacted AFD's prime customers.

25. As a proximate result of the Defendant's breach, Plaintiff AFD was injured and damaged as follows: it was caused to suffer loss of income, loss of profits and loss of business; it incurred substantial debts; its reputation was damaged; and it was otherwise injured and damaged.

WHEREFORE, Plaintiff AFD demands judgment against Defendant Pepsi–Cola Bottling Company of Luverne, Inc. for compensatory damages in an amount that a jury deems reasonable and proper....

### COUNT NINE

58. A business relationship existed between Pepsi and AFD as a result of the execution of the aforesaid contract.

59. Defendants Merchants learned during its dealings with Defendants Pepsi and Springford that Defendants Pepsi and Springford were associated in business with AFD.

60. Defendant Merchants knew, or reasonably should have known, of the business relationship between Pepsi and AFD and knew, or reasonably should have known, that Pepsi had sold its customer list to AFD.

61. Defendant Pepsi executed a release of liability in favor of Defendant Merchants which related to the use of certain confidential information by Defendant Merchants to be obtained from Defendant Pepsi.

62. Defendants Pepsi and Springford subsequently furnished and distributed the customer list referred to herinabove to Defendant Merchants and to which Merchants had no lawful right.

63. All Defendants knew that Defendant Merchants would use the customer list of Springford Foods to go into the market and sales territory of Springford Foods and which was that of AFD.

64. Defendant Merchants intentionally and maliciously interfered with the contract between Pepsi and AFD relating to the sale and use of the customer list.

65. The aforesaid customer list, which was a trade secret, was a list to be exclusively used by AFD and Pepsi and no one else, which was known, or reasonably should have known, to Defendant Merchants and to Pepsi.

66. As a proximate consequence of the intentional interference with the contract, Plaintiff Alabama Food Distributors, Inc. was injured and damaged as set forth in paragraph 25.

WHEREFORE, Plaintiff AFD demands judgment against Defendant W. Brent Springford and The Merchants Company as follows:

(a) Compensatory damages—past and future—$2,500,000.00;

(b) Punitive damages—$2,000,000.00;

(c) Its costs of this action.

### COUNT TEN

68. Defendants Springford and Merchants intentionally, willfully and maliciously interfered with the business affairs of Alabama Food Distributors, Inc. by appropriating and using the customer list of Alabama Food Distributors, Inc. without authority.

69. Said Defendants knew, or reasonably should have known, that their actions would result in serious adverse consequences as to Alabama Food Distributors, Inc.

## COUNT ELEVEN

72. The aforesaid customer list was a trade secret pursuant to Code of Alabama, § 8–27–2, et seq. in that it was a compilation of customers and related information of Springford Foods which was not readily ascertainable or capable of being derived from publicly available information.

73. The customer list was used in the business endeavors of Defendant Pepsi–Cola Bottling Company of Luverne, Inc. and was intended to be used in the business of AFD and was not publicly known and was the subject of efforts by Defendant Pepsi–Cola Bottling Company of Luverne, Inc. and AFD and their employees to maintain the secrecy of the customer list.

75. Defendants Springford and The Merchants Company, by improper means, misappropriated the trade secrets of the Springford Company. . . .

Counts Twelve, Thirteen and Fourteen of the Amended Complaint read essentially the same as Count Eleven above. Also relevant are the following excerpts from the Amendment to Complaint filed April 29, 1991:

## COUNT SEVENTEEN

103. Defendants Pepsi and Springford negligently delivered the customer list to Merchants or negligently allowed Merchants to retain the list after delivery.

104. As a proximate consequence of the negligence of said Defendants, Alabama Food Distributors, Inc. was injured and damaged as follows: it was caused to suffer loss of income, loss of profits, and loss of business; it incurred substantial indebtedness; its reputation was damaged; and it was otherwise injured and damaged.

## COUNT EIGHTEEN

106. Defendants Springford negligently delivered the customer list to Merchants or negligently allowed Merchants to retain the list after delivery.

107. As a proximate consequence of the negligence of said Defendants, James T. Cheek, Sr. was injured and damaged as follows: he was caused to suffer loss of income, loss of profits, and loss of business; he incurred substantial indebtedness; his reputation was damaged; and he was otherwise injured and damaged.

WHEREFORE, Plaintiff James T. Cheek, Sr. demands judgment against Defendants Pepsi Cola–Bottling Company of Luverne, Inc. and W. Brent Springford in such amount of compensatory damages as a jury may award and his costs.

## II.

## CONCLUSIONS OF LAW

The policy language and the allegations of the Amended Complaint in the Alabama action set out above forms the basis of Merchants argument that it is entitled to partial summary judgment. Both parties confess that there are no genuine issues of material fact related to the coverage/duty to defend question and that, therefore, this case is one which may properly be adjudicated on the pending motion for partial summary judgment. Fed.R.Civ.P. 56(c). Merchants argues that the language clearly leads to the conclusion that there is coverage under the policies. American argues, conversely, that the allegations of Amended Complaint in the Alabama action do not come within the coverage of either the CGL or the Catastrophe policy.

■ It is a longstanding principle of Mississippi law that the duty to defend arises if the suit in question "respects the insurance afforded by the terms of the policy." *Mavar Shrimp and Oyster Co. v. United States Fidelity and Guaranty Co.,* 187 So.2d 871 (Miss.1966). Put simply, if the suit is within the coverage afforded by the policy, then the insurer has a duty to defend its insured. The fact that a duty to defend arises when the suit is within the coverage is self-evident. However, this Court has also ruled that a duty to defend also arises when a potential for coverage exists. *See E.E.O.C. v. Southern Publishing Co., Inc.,* 705 F.Supp. 1213, 1218

(S.D.Miss.1988), *aff'd,* 894 F.2d 785 (5th Cir.1990).

■ Ultimate liability by the insurer is not dispositive of its duty to defend. To the contrary, the duty to defend is broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy. *CNA Casualty of California v. Seaboard Surety Co.,* 176 Cal.App.3d 598, 222 Cal.Rptr. 276 (1986); *Liberty Life Ins. Co. v. Commercial Union Ins. Co.,* 857 F.2d 945, 949 (4th Cir.1988). To decide whether American had a duty to defend Merchants, the Court must determine whether there is a potential for liability under the policies for the allegations raised in the Alabama action. In short, the Court must decide whether there is coverage for the allegations of the Amended Complaint in the Alabama action. In this connection, the Court notes that the duty to defend is determined not only from the language of the complaint but also from independent facts of which the insurer is made aware or becomes aware which create a potential of liability. *CNA of California, supra,* 176 Cal.App.3d at 606, 222 Cal.Rptr. 276. When the insured complies with the terms of the policy by providing notice to the insurer, then the insurer has a duty to investigate to ascertain the true facts related to any alleged exclusion from coverage. *Mavar Shrimp and Oyster Co., supra,* at 875. The Court is of the opinion that American has a duty to defend based upon the allegations set forth in the Amended Complaint in the Alabama action and that the allegations contained in the Amended Complaint do come within the coverage of the CGL and the Catastrophe policy.

■ American rests much of its argument that there is no coverage and no duty to defend upon the assertion that the word "advertising" does not appear anywhere in the Amended Complaint in the Alabama action and that, therefore, the injuries complained of cannot be characterized as "advertising injuries". *See* Brief of American Motorists at pp. 3–5. The Court had thought it long ago settled that notice pleadings are permissible and that no party need state with specificity the nature of his complaint except in limited circumstances such as allegations of fraud. *See* Fed. R.Civ.P. 9(b). Additionally, as Judge Cordozo stated some 75 years ago: "The law has outgrown its primitive state of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today." *Wood v. Lucy, Lady Duff–Gordon,* 222 N.Y. 88, 90–91, 118 N.E. 214 (1917). The specific mention of the word "advertising" in the pleadings in the Alabama action is not indispensable, in the view of this Court, to the question whether there is an advertising injury being alleged in the Alabama action. Moreover, despite American's reliance on the absence of the word "advertising" or "advertising injury" in the Alabama pleadings, the Court notes that the word "advertising" is defined nowwhere within the four corners of the CGL or the Catastrophe policy.

As set forth above, the two policies in question merely define the phrase "advertising injury" in terms of the kinds of offenses that phrase is intended to encompass. Neither party has provided the Court with any cases from either the Fifth Circuit or the Mississippi Supreme Court construing the phrase "advertising injury". Thus, it appears that the Court is writing on a clean slate in this regard. However, the interpretation of the policy must be consistent with the plain language of the policy. Having reviewed the subject language, the allegations in the Alabama action, and the manner in which other courts have construed the scope of "advertising" or "advertising injury", the Court concludes that the allegations in the Alabama action may be fairly read to involve an advertising injury under the CGL and the Catastrophe policy.

■ In reaching this conclusion, the Court observes that the general rule, in interpreting insurance policies, is that such policies are to be construed in accordance with general principles of contractual construction. *Western Line Consol. Sch. v. Continental Cas. Co.,* 632 F.Supp. 295

(N.D.Miss.1986). The question whether any ambiguity in the insurance contract exists is a question of law for the court to decide. *Hicks v. Quaker Oats Co.,* 662 F.2d 1158, 1175 (5th Cir.1981). Further, when an ambiguity exists, the additional rule of construction is that each and every provision of an insurance contract is to be construed most strongly against the drafter. *Brander v. Nabors,* 443 F.Supp. 764 (N.D.Miss.1978), *aff'd,* 579 F.2d 888 (5th Cir.1978). Since American drafted the language in the CGL and Catastrophe policies here, any ambiguities in those provisions will be construed against the insurer and in favor of the putative insured, Merchants. *See Williams v. Life Ins. Co. of Georgia,* 367 So.2d 922 (Miss.1979). The Court finds that there is an ambiguity in the phrase "advertising injury". Therefore, the Court will construe this language most strongly against American and in favor of Merchants.

■ The Court is of the opinion that there are at least two bases upon which to find that the allegations of the Amended Complaint in the Alabama action involve an "advertising injury" under the CGL and Catastrophe policies. The first of these is the language in the policy which affords coverage for "infringement of copyright, title or slogan." Insofar as AFD alleges in the Alabama action that Merchants improperly utilized the customer list which AFD purchased from Pepsi Cola of Luverne, Inc., the Court finds that the Alabama action may be said to involve an infringement of AFD's title to the customer list.

While American argues that infringement should be limited solely to the context of copyrights, that is not what the CGL and Catastrophe policies state. If American had wished to limit infringement solely to copyrights, it had only to say so in its policy. Moreover, since the word "infringement" is not defined in either policy of insurance, the Court must give that term its plain, ordinary or popular sense definition. *Hart v. North American Acc. Ins. Co.,* 154 Miss. 400, 122 So. 471 (1929). The popular sense definition of "infringement", as set forth in BLACK'S LAW DICTIO-NARY (5th Ed.) is: "A breaking into; a trespass or encroachment upon; a violation of a law, regulation, contract or right." Applying this definition to the allegation that Merchants improperly utilized AFD's customer list without any right or license to do so, the Court concludes that the Alabama action does contain an allegation that Merchants has infringed AFD's title to its customer list.

■ A secondary basis for finding that there is coverage and a duty to defend under the "advertising injury" language of the CGL and Catastrophe policies is the language which prohibits "misappropriation of advertising ideas...." Again, although "advertising ideas" is not defined in either policy, the Court is of the opinion that in the ordinary or popular sense, a customer list may be fairly said to be an "advertising idea". Additionally, the allegations of the Alabama action plainly state that Merchants has purportedly misappropriated AFD's trade secrets. In this connection, the Court is of the opinion that the misappropriation of trade secrets allegations are sufficiently similar to the misappropriation of advertising ideas language of American's policy as to raise a duty to defend and to provide coverage under the policies. In its brief, American states that misappropriation of ideas "refers to the tort of appropriation of a 'valuable but uncopyrightable idea which plaintiff has uncovered by great effort and expense.'" *(citing Decorative Aides Corp. v. Staple Sewing Aides,* 497 F.Supp. 154 (S.D.N.Y. 1980)). Applying American's definition to the customer list in question, the Court holds that the customer list was such a "valuable but uncopyrightable idea". Insofar as Merchants is charged with misappropriating that idea, the Court concludes that there is a basis for coverage and a duty to defend under the misappropriation of advertising ideas language of the subject policies.

■ American makes a forceful argument to the effect that the alleged activities with which Merchants is charged in the Alabama action were not "committed in the course of advertising". As American argues: "[A]dvertising injury cannot apply unless the complained of activities occur 'in

the course of advertising' ". Brief of American Motorists Insurance Company at 4. Absent a definition of either "advertising" or conduct "in the course of advertising", the Court must make a determination as to what those words and phrases entail. As evidenced by the deposition excerpt submitted by Merchants,[2] it appears that part of the conduct alleged in the Alabama action relates to the use of AFD's customer list by Merchants to send a flyer to some of AFD's customers. This conduct is, in the view of the Court, conduct committed "in the course of advertising". At the very least, the Court finds that the allegations in the Alabama action raised a duty to defend on the part of American. *Compare Liberty Life Ins. Co. v. Commercial Union Ins. Co.*, 857 F.2d at 950 (conduct which could be termed advertising raised a duty to defend on part of insurer). In short, where a direct competitor allegedly acquires and uses the customer list of another company in order to send direct mail solicitations for business to the competitor, this Court concludes that such conduct is within the definition of conduct committed within the course of advertising under the CGL and the Catastrophe policies involved herein. Furthermore, where it is alleged that the insured improperly acquired, i.e., misappropriated the customer list, then there is coverage under the "misappropriation of advertising ideas" language of the CGL and Catastrophe policies. Finally, where title to the customer list was allegedly bought by the injured party, AFD, and later used by the insured, Merchants, without right, license or permission, then the Court finds that such action may be characterized as an "infringement of title" to the customer list. For all these reasons, the Court concludes that there is coverage available under the CGL and Catastrophe policies for the allegations set forth in the Amended Complaint in the Alabama action. Further, the Court concludes that American has a duty to defend Merchants in the Alabama action. It will be so ordered.

**2.** The Court rejects American's suggestion that the deposition excerpt should not be considered because it is hearsay and would be inadmissible at trial. The deposition testimony was rendered under oath and would, in the opinion of the Court, be admissible at trial. With regard to the flyer attached to the excerpt, the Court does not consider the flyer for the truth of the matter asserted therein, but merely to establish that such a flyer was received by Mr. Cheek. Therefore, the flyer is not hearsay for this limited purpose.

## III.

### CONCLUSION

Having reviewed all the cases and the arguments presented by the parties, the Court finds that there are no genuine issues of material fact. The Court notes that Merchants paid a considerable sum of money for the insurance coverage it seeks to enforce here. The coverage afforded by the policies in question is to be read broadly in favor of coverage and in favor of the insured. Reading the language in that manner, the Court finds that there is coverage available under both policies and that American has a duty to defend Merchants in the Alabama action. The Court therefore finds that Plaintiff The Merchants Company is entitled to partial summary judgment on the issue of coverage and the insurer's duty to defend. The Court will reserve ruling at this time on the question of whether there is also coverage available under the "bodily injury" or "personal injury" language of the CGL and Catastrophe policies. Accordingly, it is hereby

ORDERED AND ADJUDGED that the Plaintiff's Motion for Partial Summary Judgment is granted;

IT IS FURTHER ORDERED AND ADJUDGED that the Defendant American Motorist Insurance Company is ordered to provide the Plaintiff with a defense in the Alabama action;

IT IS FURTHER ORDERED AND ADJUDGED that the Court will reserve ruling on the remaining issues raised in the Plaintiff's Complaint but that the Court hereby orders that there is no just reason for delay in entry of judgment on the issues of coverage and the duty to defend;

IT IS FURTHER ORDERED AND ADJUDGED that a judgment conforming to this Memorandum Opinion and Order shall be entered this date.

SO ORDERED AND ADJUDGED.

**620**

JUDGMENT

Pursuant to a Memorandum Opinion and Order entered this date,

IT IS HEREBY ORDERED AND AD-JUDGED that the Plaintiff's Motion for Partial Summary Judgment is granted;

IT IS FURTHER ORDERED AND AD-JUDGED that judgment is entered in favor of the Plaintiff The Merchants Company on the issue of coverage under the Commercial General Liability policy and Commercial Catastrophe Liability policy issued by Defendant American Motorists Insurance Company;

IT IS FURTHER ORDERED AND AD-JUDGED that the Defendant American Motorist Insurance Company is ordered to provide the Plaintiff with a defense in the Alabama action;

IT IS FURTHER ORDERED AND AD-JUDGED that the Court will reserve ruling on the remaining issues raised in the Plaintiff's Complaint but that the Court hereby orders that there is no just reason for delay in entry of this judgment on the issues of coverage and the duty to defend.

SO ORDERED AND ADJUDGED.