ATLANTIC MUTUAL INSURANCE COMPANY, Plaintiff-Respondent,

v.

BADGER MEDICAL SUPPLY COMPANY, Defendant-Appellant, and

GENERAL MEDICAL CORPORATION, Defendant.

Court of Appeals

No. 94–0500. Submitted on briefs November 8, 1994.—Decided January 19, 1995.

(Also reported in 528 N.W.2d 486.)

231

For the defendant-appellant the cause was submitted on the briefs of *Richard L. Bolton* of *Stroud, Stroud, Willink, Thompson & Howard* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Brent P. Smith* of *Johns & Flaherty, S.C.* of La Crosse and *Lisa Marco Kouba* and *Mark D. Paulson* of *Clausen Miller Gorman Caffrey & Witous, P.C.* of Chicago, Illinois.

Before Eich, C.J., Sundby and Vergeront, JJ.

VERGERONT, J.   Badger Medical Supply Company appeals from a summary judgment declaring that Atlantic Mutual Insurance Company's policy does not provide coverage for the claim of tortious interference with contract that General Medical Corporation asserts against Badger, and declaring that Atlantic Mutual has no duty to defend Badger against that claim. Badger asserts that Atlantic Mutual's policy provides coverage under an "advertising injury" clause. We disagree, and we affirm the judgment.

## BACKGROUND

General Medical sued James Kobs and Badger. The amended complaint contains these allegations. General Medical, a provider of medical supplies, had employed Kobs as a sales representative in a territory in and around La Crosse. Kobs agreed that upon termination of his employment with General Medical, he would not compete with General Medical in the same or similar business with customers served by Kobs during his employment with General Medical for a period

of eighteen months, and that he would not divulge to anyone confidential information, trade or business secrets or customer lists of General Medical. Kobs resigned his employment with General Medical and began to work for Badger, also a medical supply company serving the La Crosse area. As a Badger employee, Kobs is serving customers that he served while working for General Medical, and he has divulged confidential information. The amended complaint asserts two claims against Kobs, one for injunctive relief and one for damages for breach of the agreement.

The amended complaint also asserts a claim against Badger. The allegations are that Badger persuaded Kobs to leave General Medical and to work for Badger in the same or similar position, and that Badger intentionally induced Kobs to breach the restrictive covenant in order to obtain and control numerous customers served by Kobs while with General Medical. General Medical seeks compensatory and punitive damages from Badger.[1]

Badger tendered defense to Atlantic Mutual under the Commercial Package Policy issued to Badger. Atlantic Mutual denied coverage and declined to defend on the ground that the policy did not provide

---

[1] The amended complaint was filed in La Crosse County Circuit Court as *Gen. Medical Corp. v. Kobs*, No. 90-CV-620. The trial court granted Badger's motion for summary judgment on the ground that the restrictive covenant was unenforceable. *Gen. Medical Corp. v. Kobs*, No. 90-CV-620 (La Crosse County Cir. Ct. Sept. 25, 1992). We reversed, concluding that there were disputed issues of material fact. *Gen. Medical Corp. v. Kobs*, 179 Wis. 2d 422, 507 N.W.2d 381 (Ct. App. 1993). Case No. 90-CV-620 is apparently still pending.

coverage for the claim against Badger. The disputed policy language provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "advertising injury" to which this insurance applies.

The term "advertising injury" is defined in the policy as follows:

> "Advertising injury" means injury arising out of one or more of the following offenses:
> a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> b. Oral or written publication of material that violates a person's right to privacy;
> c. Misappropriation of advertising ideas or style of doing business; or
> d. Infringement of copyright, title or slogan.

Atlantic Mutual filed this declaratory judgment action, requesting a declaration that there was no coverage under its policy because the amended complaint did not allege any of the four offenses listed under the definition of "advertising injury." Atlantic Mutual also requested a declaration that it had no duty to defend or indemnify Badger or pay its defense fees. Atlantic Mutual and Badger filed cross motions for summary judgment, with Badger contending that there was coverage and a duty to defend under the offense of "misappropriation of advertising ideas or style of doing business." The trial court granted Atlantic Mutual's motion and denied Badger's motion.

235

## STANDARD OF REVIEW

We review a grant of summary judgment *de novo* by applying the same standards employed by the trial court. *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48, 49 (Ct. App. 1994).

The interpretation of an insurance contract is a question of law that we review independently of the trial court. *Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 116 Wis. 2d 206, 212, 341 N.W.2d 689, 691 (1984). An insurer has a duty to defend its insured if the complaint alleges facts that, if proven, would give rise to liability under the policy. *Professional Office Bldgs., Inc. v. Royal Indem. Co.*, 145 Wis. 2d 573, 580, 427 N.W.2d 427, 429 (Ct. App. 1988). We determine an insurer's duty to defend solely from the allegations contained in the complaint; extrinsic facts are not considered. *Id.* at 582, 427 N.W.2d at 430.

## INTERPRETATION OF POLICY LANGUAGE

Badger contends that the policy definition of "advertising injury"—"misappropriation of advertising ideas or style of doing business"—is ambiguous and must be construed against Atlantic Mutual. So construed, Badger contends, the definition is broad enough to include misappropriation of customer information and market strategy, and the amended complaint can be read to contain allegations against Badger of these types of misappropriation.

We do not agree that the policy language is ambiguous. Nor do we agree that the amended complaint can be read to allege a claim against Badger for either

misappropriation of advertising ideas or misappropriation of style of doing business.

Wisconsin courts have not construed the policy language at issue here, "advertising injury" or "misappropriation of advertising ideas or style of doing business." Both parties cite to numerous cases from other jurisdictions that have interpreted advertising injury coverage. But, because of differences in the policy language, or the claims asserted that allegedly come within that language, or the standard for determining the duty to defend, none of those cases squarely addresses the issue presented here.[2] We begin, then, with the principles of construction of insurance contracts under Wisconsin law.

A word or phrase in an insurance contract is ambiguous if it is susceptible to more than one reasonable construction. *Katze*, 116 Wis. 2d at 213, 341 N.W.2d at 692. Although Badger argues that the policy language is ambiguous, it also contends that the terms "misappropriation," "advertising idea," and "style of doing business" are defined either by case law or common usage. Apparently Badger finds ambiguity in the term "advertising injury." However, since "advertising injury" is defined as any one of four listed offenses, there is no ambiguity if the meaning of the applicable

[2] For example, the definition of "advertising injury" in the policy language in *John Deere Ins. Co. v. Shamrock Industries, Inc.*, 696 F. Supp. 434 (D. Minn. 1988), *aff'd on other grounds*, 929 F.2d 413 (8th Cir. 1991), contained the phrase "occurring in the course of the named insured's advertising activities," and the court found this phrase to be ambiguous. *Id.* at 440. And in *Merchants Co. v. Am. Motorists Ins. Co.*, 794 F. Supp. 611 (S.D. Miss. 1992), the complaint contained a claim for misappropriation of a customer list, alleged to be a trade secret. *Id.* at 614.

offense is clear. The offense Badger relies on may be committed in either one of two ways: by misappropriating advertising ideas or by misappropriating a style of doing business. We conclude that the meaning of each is defined either by case law or common usage and there is no ambiguity as to either.

The common law tort of misappropriation, first recognized in *Int'l News Serv. v. Associated Press,* 248 U.S. 215 (1918), was applied by the Wisconsin Supreme Court in *Mercury Record Productions, Inc. v. Economic Consultants, Inc.,* 64 Wis. 2d 163, 218 N.W.2d 705 (1974), *cert. denied,* 420 U.S. 914 (1975). The court in *Mercury Record* described the elements of this tort:

> Thus, the essence of the cause of action in misappropriation is the defendant's use of the plaintiff's product, into which the plaintiff has put time, skill, and money; and the defendant's use of the plaintiff's product or a copy of it in competition with the plaintiff and gaining an advantage in that competition because the plaintiff, and not the defendant, has expended the energy to produce it.

*Id.* at 175, 218 N.W.2d at 710. The court concluded that a complaint alleging that defendants copied sound recordings made by plaintiffs without plaintiffs' permission stated a cause of action for misappropriation of plaintiffs' property interest.[3] The tort of misappropriation has been applied by courts to protect a variety of property interests. However, we are concerned with only two types: misappropriation of advertising ideas and misappropriation of style of doing business.

---

[3] At the time the copying occurred in *Mercury Record Productions, Inc. v. Economic Consultants, Inc.,* 64 Wis. 2d 163, 218 N.W.2d 705 (1974), *cert. denied,* 420 U.S. 914 (1975), the federal Copyright Act did not provide protection for sound recordings. *Id.* at 178, 218 N.W.2d at 712.

We agree with Badger that "advertising" is a non-technical word that should be given its ordinary meaning. This meaning may be ascertained from a recognized dictionary. *Cuna Mut. Ins. Soc'y v. DOR*, 120 Wis. 2d 445, 450, 355 N.W.2d 541, 543-44 (Ct. App. 1984). In *Cuna*, in the context of interpreting a tax exemption statute, we consulted THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 19 (New College ed. 1980), and WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 31 (4th ed. 1976), for a definition of "advertise." The two definitions were essentially the same: "[t]o call the attention of the public to a product or business; . . . to proclaim the qualities or advantages of (a product or business) so as to increase sales" (AMERICAN HERITAGE); and "to call public attention to esp. by emphasizing desirable qualities so as to arouse a desire to buy or patronize . . ." (WEBSTER'S). *Id.* at 450, 355 N.W.2d at 544.

An "advertising idea" then, is an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage. This is the ordinary meaning of the term, and we see nothing ambiguous about it. Badger does not suggest any other construction and, in fact, cites *Cuna* in support of its position. Since the elements of the tort of misappropriation are defined, the phrase "misappropriation of advertising ideas" is not ambiguous. It has been recognized as a cause of action by courts, although not in Wisconsin. *See, e.g., John W. Shaw Advertising, Inc. v. Ford Motor Co.*, 112 F. Supp. 121 (N.D. Ill. 1953).

"Style of doing business" is a phrase used by the courts to refer to "a company's comprehensive manner of operating its business." *St. Paul Fire & Marine Ins.*

*Co. v. Advanced Interventional Sys., Inc.*, 824 F. Supp. 583, 585 (E.D. Va. 1993), *aff'd*, 21 F.3d 424 (4th Cir. 1994). We agree with Badger that the phrase may include distinctive sales techniques.

Atlantic Mutual argues that misappropriation of style of doing business is the same as infringement of trade dress. We do not agree. "Trade dress" is the total image of a product or business and "may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. —, — n.1, 120 L.Ed.2d 615, 621 (1992). A style of doing business could qualify for protection as trade dress, but only if it is either inherently distinctive or has acquired distinctiveness, and only if there is a likelihood of confusion. *Id.* at —, 120 L.Ed.2d at 624. Unlike infringement of trade dress, the tort of misappropriation does not require that the public be confused by the misappropriation. *See* 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 10.25 (3d ed. 1994) [hereinafter MCCARTHY ON TRADEMARKS].[4] We

---

[4] The relationship between the tort of misappropriation (whether of style of doing business or of advertising ideas) and claims based on sources of intellectual property law, raises numerous issues, including preemption and the extent to which courts permit misappropriation claims where requirements for more specific claims are not met. *See, e.g.*, MCCARTHY ON TRADEMARKS, §§ 10.30, 10.34[2]; *Am. Economy Ins. Co. v. Reboans, Inc.*, 852 F. Supp. 875, 879-82 (N.D. Cal. 1994). *See also Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 220-23, 267 N.W.2d 242, 251-52 (1978) (no protection for customer lists under misappropriation doctrine, but customer lists may be protected as trade secrets). However, we need not resolve these issues in order to interpret the policy language.

conclude that case law discussion of both "misappropriation" and "style of doing business" sufficiently defines each term so that there is only one reasonable construction of this policy language.

## ANALYSIS OF THE AMENDED COMPLAINT

Badger acknowledges that the claim asserted against it is one for interference with contract. However, it argues that this claim is "in essence" one for misappropriation of advertising ideas and style of doing business. Badger reaches this result by the following route: customer lists are advertising ideas and Kobs allegedly stole customer lists and gave these to Badger; and by hiring Kobs, who knew how to service the customers of General Medical, Badger appropriated General Medical's style of doing business. There are two flaws in this reasoning.

First, in determining whether there is a duty to defend, we do not consider later depositions or other materials; we look only at the allegations of the complaint. *Professional Office Bldgs.*, 145 Wis. 2d at 580-82, 427 N.W.2d at 429-30. There is no allegation in the amended complaint that Kobs gave Badger General Medical's customer lists. Nor do the other assertions that Badger makes in its brief to explain the nature of the claim against it appear in the amended complaint. Apparently, the source of these assertions is discovery conducted in the action against Badger.

Second, the allegations in the amended complaint do not state a claim for misappropriation of either advertising ideas or style of doing business against Badger no matter how liberally the amended complaint is construed. It is true, as Badger asserts, that the duty

241

to defend depends on the nature of the claim, not on the merits of the claim, and that if there are doubts about the duty to defend, they must be resolved in favor of the insured. *Elliott v. Donahue*, 169 Wis. 2d 310, 321, 485 N.W.2d 403, 407 (1992). The insurer is obliged to defend the entire action "if just one theory of liability appears to fall within the coverage of the polic[y]." *Sch. Dist. of Shorewood v. Wausau Ins. Companies*, 170 Wis. 2d 347, 366, 488 N.W.2d 82, 88 (1992). But the allegations in the complaint must state a claim or cause of action for the liability insured against; otherwise there is no duty to defend. *Grieb v. Citizens Casualty Co.*, 33 Wis. 2d 552, 557-58, 148 N.W.2d 103, 106 (1967).

The allegations that Kobs divulged confidential information (the amended complaint does not say what or to whom) and that Badger induced the breach so as to obtain General Medical's customers are not sufficient to state a claim for misappropriation of either advertising ideas or style of doing business. Simply because misappropriation of advertising ideas could involve confidential information, and misappropriation of style of doing business could involve customers, it does not follow that allegations relating to confidential information or customers transform a claim for interference with contract into a claim covered by the policy. *See Nichols v Am. Employers Ins. Co.*, 140 Wis. 2d 743, 748-51, 412 N.W.2d 547, 550-51 (Ct. App. 1987) (claim for sexual harassment is not covered by a policy that provides coverage for defamation, even if the complaint were to allege a defamatory statement). The logical result of Badger's argument is that any claim for tortious interference with a restrictive covenant in an employment agreement would be considered a claim for misappropriation of advertising ideas and style of

doing business. This is an unreasonable reading of the policy language and we reject it.

Since the nature of the claim against Badger was for neither misappropriation of advertising ideas nor misappropriation of style of doing business, it is not covered under Atlantic Mutual's policy. Since Atlantic Mutual has no duty to indemnify Badger, it has no duty to defend Badger against General Medical's claim.

*By the Court.*—Judgment affirmed.