FIREMAN'S FUND INSURANCE COMPANY OF WISCONSIN,
Plaintiff-Appellant,

v.

BRADLEY CORPORATION and Kevin B. Kline,
Defendants-Respondents,†

LAWLER MANUFACTURING CORPORATION, INC.,
Defendant.

Court of Appeals

No. 01–2432. Submitted on briefs March 28, 2002.—Decided
June 11, 2002.

2002 WI App 179

(Also reported in 649 N.W.2d 685.)

† Petition to review granted 10-21-02.

648

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *William P. Croke* of *Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.,* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Lisa S. Neubauer* and *Michael D. Rosenberg* of *Foley & Lardner,* of Milwaukee.

Before Fine, Schudson and Curley, JJ.

¶ 1. CURLEY, J.   Fireman's Fund Insurance Company of Wisconsin (Fireman's) appeals from the trial court's denial of its motion for summary judgment in a declaratory judgment action. Fireman's also appeals from the trial court's grant of summary judgment to Bradley Corporation (Bradley). Fireman's raises three issues on appeal:   (1) whether the insurance policies issued to Bradley by Fireman's provide coverage for any of the claims in the complaint filed in the underlying lawsuit by Lawler Manufacturing Corporation, Inc., (Lawler), against Bradley; (2) whether Bradley's delay of over one year in providing Fireman's with notice of the underlying lawsuit was prejudicial; and (3) whether the trial court's assessment of Bradley's legal expenses was proper.

¶ 2.   We conclude that the insurance polices do not provide coverage for any of the allegations in Lawler's complaint raised by Bradley. Because this issue is dispositive, we need not address the remaining issues. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663 (1938) (stating that if a decision on one point disposes of

the appeal, we need not address the other issues raised); see also *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground."). Accordingly, the trial court is reversed and the cause remanded for the trial court to enter an order in conformity herewith.

## I. BACKGROUND.

¶ 3. In February of 1996, Fireman's issued four liability insurance policies to Bradley. These policies were effective from February 1, 1996 to February 1, 2000. The policies provided that Fireman's would pay those sums that the insured, Bradley, became obligated to pay as damages because of bodily injury, property damage, personal injury, or advertising injury. The policies define each of these terms.

¶ 4. On December 3, 1998, Lawler filed a federal lawsuit in the southern district of Indiana against Bradley claiming breach of fiduciary duty, trade secret misappropriation, unjust enrichment, diversion of corporate opportunities, conversion, negligence and unfair competition. Approximately six months later, Lawler filed a supplemental complaint also asserting a claim for patent infringement.

¶ 5. Bradley and Lawler are competitors in the development and sale of thermostatic mixing systems intended for emergency applications.[1] The lawsuit resulted from alleged corporate/industrial espionage by a former Lawler employee, Kevin Kline. The complaint

---

[1] A thermostatic mixing valve is a device that mixes hot and cold water to produce tempered water which is used in emergency shower and eyewash systems to ensure that the water will be delivered at a safe temperature whenever needed in a chemical or industrial emergency.

alleges that Kline stole Lawler's designs for its thermostatic mixing valve technology, and that Bradley then hired Kline and used the stolen technology to create its own emergency showers and eyewash systems.

¶ 6. On March 2, 2000, Bradley notified Fireman's of the lawsuit. Fireman's denied coverage for the lawsuit, claiming that Lawler's complaint did not contain allegations that were potentially covered under the policies. On August 18, 2000, Fireman's sought a declaratory judgment in Milwaukee County stating that it had no obligation to defend or indemnify Bradley in the Lawler lawsuit. Both parties filed motions for summary judgment, and on July 25, 2001, the trial court denied Fireman's motion and granted Bradley's. The trial court ordered Fireman's to pay Bradley $2,887,594.24 for defense and indemnification costs.

## II. ANALYSIS.

### A. Fireman's does not have a duty to indemnify Bradley based on Lawler's claim for trade secret misappropriation.

¶ 7. In its summary judgment analysis, the trial court determined that Fireman's was obligated to defend and indemnify Bradley based on Lawler's claim of trade secret misappropriation. Fireman's contends that there is no coverage under the advertising injury clause of the insurance policies because there is no causal connection between Lawler's alleged injuries and Bradley's advertising activities.

¶ 8. Our review of the circuit court's decision to grant summary judgment is *de novo*. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–16, 401 N.W.2d

816 (1987). Summary judgment must be granted if the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).[2] Further, "the construction of the words and clauses in an insurance policy is a question of law for the court," *Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 116 Wis. 2d 206, 212, 341 N.W.2d 689 (1984), which we review *de novo*.

¶ 9.   "To determine whether a duty to defend exists, the complaint claiming damages must be compared to the insurance policy and a determination made as to whether, if the allegations are proved, the insurer would be required to pay the resulting judgment." *School Dist. of Shorewood v. Wausau Ins. Cos.*, 170 Wis. 2d 347, 364–65, 488 N.W.2d 82 (1992). "We determine an insurer's duty to defend solely from the allegations contained in the complaint; extrinsic facts are not considered." *Atlantic Mut. Ins. Co. v. Badger Med. Supply Co.*, 191 Wis. 2d 229, 236, 528 N.W.2d 486 (Ct. App. 1995). We review the complaint in the instant case with the following in mind:

> An insurer's duty to defend the insured in a third-party suit is predicated on allegations in a complaint which, if proven, would give rise to the possibility of recovery that falls under the terms and conditions of the insurance policy. The duty has nothing to do with the merits of the claim because the insurer agreed to defend even if the allegations in the suit are groundless, false or fraudulent. Rather, it is the nature of the claim alleged against the insured which is controlling. If

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

> there is any doubt about the duty to defend, it must be resolved in favor of the insured.

*School Dist. of Shorewood*, 170 Wis. 2d at 364 (citations omitted).

¶ 10. The insurance policies in question state, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of **personal injury** or **advertising injury** . . . .
>
> . . . .
>
> . . . This insurance applies to:
>
> . . . .
>
> . . . **Advertising injury** caused by an offense committed in the course of advertising your goods, products or services.

An amendment to the original policies defines an "advertising injury" as the following:[3]

> **Advertising injury** means injury arising out of one or more of the following offenses:
>
> a.  Oral, written, televised or videotaped publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

---

[3] Although the original insurance policies executed in 1996 did not include coverage for trademark infringement, coverage for trademark infringement was added by a broadened form endorsement to the policies executed in 1998–99 and 1999–2000.

b.     Oral, written, televised or videotaped publication of material that violates a person's right of privacy;

c.     Misappropriation of advertising ideas or style of doing business; or

d.     Infringement of trademark, copyright, title or slogan.

¶ 11. Bradley argues that paragraph 72 of Lawler's complaint falls within the coverage in Bradley's insurance policy for the "[m]isappropriation of advertising ideas or style of doing business." Paragraph 72 of the complaint states:

### Count II

### Trade Secret Misappropriation

. . . .

72. During his employment with Lawler and as an officer, director and shareholder of Lawler, Kline had access to, learned and acquired Lawler's highly confidential and proprietary information including but not limited to Lawler's annual business and strategic plans, sales reports and strategies, pricing margin and profitability information, material pricing and distribution costs, new product development, technology, personnel information and production, planning and scheduling, all of which is hereinafter collectively referred to as the "Trade Secrets" of Lawler.

¶ 12. Bradley links these activities to those alleged in paragraph 63 of the complaint in support of its conclusion that the injury complained of was committed in the course of advertising. Paragraphs 63 states:

63. During the week of October 26, 1998, at a show of the American Society of Plumbing Engineers (ASPE)

held in Indianapolis, Indiana, Bradley and its representatives displayed emergency shower systems incorporating the accused products to existing and potential customers.

¶ 13. The offense Bradley relies on – the misappropriation of advertising ideas or style of doing business – may be committed in one of two ways: by misappropriating advertising ideas or by misappropriating a style of doing business. *See Atlantic Mut. Ins. Co.*, 191 Wis. 2d at 238. "[T]he essence of the cause of action in misappropriation is the defendant's use of the plaintiff's product, into which the plaintiff has put time, skill, and money; and the defendant's use of the plaintiff's product or a copy of it in competition with the plaintiff and gaining an advantage in that competition because the plaintiff, and not the defendant, has expended the energy to produce it." *Id.* An "advertising idea" is "an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage." *Id.* at 239. " 'Style of doing business' is a phrase used by the courts to refer to 'a company's comprehensive manner of operating its business.' " *Id.*

¶ 14. Two fundamental prongs must be satisfied before we may find coverage under an advertising injury clause: (1) the injury must fall within one of the categories covered under the insurance policy, *e.g.*, the injury qualifies as either the misappropriation of advertising ideas or the misappropriation of the style of doing business; and (2) there is a causal connection between the advertising and the injury. *See Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 748 (3d Cir. 1999) (stating that to be covered under a similar policy,

allegations of unfair competition have to involve an advertising idea, not just an idea that is made the subject of advertising). While the allegations in Count II of Lawler's complaint might be liberally construed to fit within the definition of "the misappropriation of advertising ideas or style of doing business," we need not address the issue because we conclude that there is not a satisfactory causal connection between the advertising and the injury in question. *See Simply Fresh Fruit, Inc. v. Continental Ins. Co.*, 94 F.3d 1219, 1223 (9th Cir. 1996) (explaining that "the *advertising activities* must *cause* the injury – not merely expose it.") (emphasis in original).

¶ 15. The plain language of the insurance policies requires the advertising injury to have been "caused by an offense committed in the course of advertising your goods, products or services." As stated in *Advance Watch Co. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795 (6th Cir. 1996):

> The policy in issue provides coverage for liability for advertising injury "caused by an offense committed in the course of advertising . . . goods, products or services." The policy therefore requires some nexus between the ground of asserted liability and the insured's advertising activities before there is coverage or a duty to defend. [T]his policy provision requires that the injury claimed to have been suffered by the claimant ha[s] been caused by the insured's advertising activities. Otherwise, advertising injury coverage would apply whenever an advertised product or service is alleged to have caused harm, rendering the coverage applicable with respect to most claims against an insured business.

*Id.* at 806 (citations omitted).

¶ 16.  Here, Count II of Lawler's complaint, however, alleges that Bradley's injury was caused by the theft of its trade secrets, not the subsequent advertising:

> 93. Bradley's and Kline's actual or threatened misappropriation of Lawler's Trade Secrets has caused and will continue to cause other immediate, substantial and irreparable harm to Lawler, for which there is no adequate remedy at law.

Thus, Lawler's injury occurred independent and irrespective of any advertising by Bradley. Accordingly, we conclude that the alleged harm was caused by the misappropriation of the trade secrets, not by the advertising itself, and, therefore, Bradley fails to satisfy the requirement that the injury be caused by an offense committed in the course of advertising its goods or products.

## B. Fireman's does not have a duty to indemnify Bradley based on Lawler's Lanham Act claim.

¶ 17.  Alternatively, Bradley responds that Fireman's had a duty to defend and must indemnify Bradley on the basis of Lawler's Lanham Act claim.[4] Bradley argues that Lawler's Lanham Act claim qualifies as an "advertising injury" under the "[i]nfringement of trademark" amendment to the 1998–99 and 1999–2000 policies. Fireman's replies that Lawler's Lanham Act claim only alleges the basis for a claim of unfair competition, not trademark infringement, thereby failing to trigger Fireman's duty to defend and indemnify Bradley against Lawler's claims.

---

[4] The Lanham Act is the federal trademark and unfair competition statute codified at 15 U.S.C. § 1051 *et seq.*

¶ 18. In its argument, Bradley asserts that the terms "trademark infringement" and "unfair competition" are essentially synonymous and involve identical proof. Thus, Bradley concludes that because Lawler asserted a claim for unfair competition, it likewise asserted a claim for trademark or trade dress infringement. The premise of Bradley's argument ignores a fine distinction – while a claim for unfair competition under the Lanham Act may be based on trademark or trade dress infringement, unfair competition is a general term encompassing a number of anticompetitive activities not limited to trademark or trade dress infringement. After examining Lawler's complaint, we conclude that although the complaint sets forth a claim for unfair competition, the claim is based on the theft of trade secrets rather than trademark or trade dress infringement. Accordingly, Fireman's has no duty to indemnify Bradley under the "[i]nfringement of trademark" provision of the insurance policies.

¶ 19. The complaint against Bradley reads, in relevant part:

## Count VII

## Federal Unfair Competition

115. Bradley's misappropriation of Lawler's Trade Secrets, technologies and designs relating to thermostatic mixing valves and the use thereof in connection with the accused products is a false designation of origin, or a false description or representation, and wrongfully and falsely designates the origin of Lawler's thermostatic mixing valve technology as originating from or being connected with Bradley, and amounts to using a false description or representation in commerce.

116. Bradley's said acts are in violation of the federal Lanham Act (15 U.S.C. § 1125).

¶ 20.  "A trademark is a word or other designation, or combination of such designations, that is distinctive of a person's goods or services and that is used in a manner that identifies those goods or services and distinguishes them from the goods or services of others." *Madison Reprographics, Inc. v. Cook's Reprographics, Inc.*, 203 Wis. 2d 226, 234 n.3, 552 N.W.2d 440 (Ct. App. 1996). By contrast, "a trade secret is something that derives its value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." *World Wide Prosthetic Supply, Inc. v. Mikulsky*, 2002 WI 26, ¶ 35, 251 Wis. 2d 45, 640 N.W.2d 764 (citation omitted).

¶ 21.  A party may allege trademark infringement pursuant to either § 32 or § 43 of the Lanham Act. *See* 15 U.S.C. §§ 1114 and 1125. The difference between a standard claim for trademark infringement pursuant to § 32 and a claim for unfair competition pursuant to § 43, is that a party may recover for trademark infringement under § 43 regardless of whether its mark is registered, or even registrable, by proving that its mark is so associated with its goods that the use of the same or similar marks by another company constitutes a representation that its goods come from the same source. *See Metric & Multistandard Components Corp. v. Metric's, Inc.*, 635 F.2d 710, 714 (8th Cir. 1980). Lawler's complaint alleges that Bradley violated § 43(a) of the Lanham Act. *See* 15 U.S.C. § 1125(a). Section 43(a)(1) of the Lanham Act states:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

¶ 22. The purpose of § 43(a) is to create a federal remedy for the particular kind of unfair competition that results from false designation of origin or other false representation used in connection with the sale of a product. *See Metric,* 635 F.2d at 713. However, "unfair competition" is a vague term proscribing a number of activities, including, but not limited to: (1) infringement of trademarks and service marks; (2) dilution of good will in trademarks; (3) use of confusingly similar corporate, business and professional names; (4) use of similar product configuration, trade dress or packaging; (5) infringement of the right of publicity; (6) "bait and switch" selling tactics; (7) below-cost selling; (8) false representation and false advertising; and (9) theft of trade secrets. *See* 1 J. THOMAS McCARTHY, McCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 1:10 (3d ed. 1996). Thus, trademark and trade dress infringement are

specific examples of the more broadly defined tort of unfair competition. *See Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985). Because trademark infringement is a narrower concept than unfair competition, it is possible to be guilty of unfair competition even when infringement is not present. *See Estate of Presley v. Russen*, 513 F. Supp. 1339, 1373 (D.N.J. 1981).

■

¶ 23. Thus, Bradley's understanding of unfair competition falls short of being fully inclusive by omitting such important areas of unfair competition such as false advertising, dilution, theft of trade secrets and infringement of the right of publicity, which do not require proof of consumer confusion as to the source or origin of the goods in question. *See* McCARTHY ON TRADEMARKS § 1:9 (stating that while a claim of unfair competition involving trademark or trade dress infringement must involve an allegation of consumer confusion, a claim of unfair competition involving theft of trade secrets does not). Therefore, in a case of trademark or trade dress infringement, it is only the exclusive symbol, packaging or product configuration, characterized as either a trademark or trade dress, that is juxtaposed against another's usage to determine whether or not the two uses are likely to confuse consumers. *See id.* § 2:7.

■

¶ 24. Bradley's claim for coverage under the insurance policies for infringement of a trademark fails for two reasons. First, the complaint does not allege a claim for trademark infringement under § 43(a): Lawler's complaint never explicitly mentions a trademark or even refers to any trademark right or any other word, name or symbol that would distinguish its goods from the goods

661

or services of others. *See* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 9 (1995). Second, the complaint does not allege a claim for trade dress infringement: Lawler does not claim that Bradley copied the overall image of its showers or eyewash stations, including any factors such as size, shape, color, texture, etc. *See generally Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992). Further, Lawler failed to allege other key elements regarding trade dress – that the thermostatic mixing valve technology was distinctive and that it was not functional. *See id.* at 769–70. The fact that Lawler's unfair competition claim is not based on either trademark or trade dress infringement is further evidenced by the fact that the complaint fails to allege consumer confusion. *See id.* at 769 (stating that liability under § 43(a) based on trademark or trade dress infringement requires proof of the likelihood of confusion).

¶ 25. Conversely, Lawler's complaint establishes a claim of unfair competition based on the theft of trade secrets. Count VII clearly states that Lawler's claim for unfair competition is based on the "misappropriation of Lawler's Trade Secrets." Despite this language, Bradley argues that this section sets forth claims "for trade dress and/or trademark infringement." This argument is belied by the fact that Lawler uses the term "trade secret" over thirty times throughout the complaint, while never mentioning or using the terms "trademark" or "trade dress" anywhere. This situation fits squarely within the category of instances where a defendant may be guilty of competing unfairly without having technically infringed any protectible trademark or trade dress right. *See Professional Golfers Ass'n v. Bankers Life & Cas. Co.*, 514 F.2d 665, 671 (5th Cir. 1975) ("Unfair competition . . . is a more broadly conceived tort than

662

its frequent litigation partner, trademark infringement, and there are some instances where a defendant is guilty of competing unfairly without having technically infringed."); *see also Fotomat Corp. v. Photo Drive-Thru, Inc.*, 425 F. Supp. 693, 708–09 (D.N.J. 1977) ("It is possible to be guilty of unfair competition even when trademark infringement is not present, if use of a similar but noninfringing mark or device is combined with unfair practices in a manner which is likely to deceive purchasers regarding the origin of goods under all the circumstances."). Thus, we conclude that although Count VII of Lawler's complaint sets forth a claim for unfair competition based on Kline's theft of Lawler's trade secrets, it does not set forth a claim for either trademark or trade dress infringement.

■■■

¶ 26.   Finally, Bradley also contends that Lawler's Lanham Act claim falls within the "[m]isappropriation of advertising ideas or style of doing business" clause of the insurance policies. Again, there is no causal connection between the advertising and the injury. Because Lawler's injury was caused by the theft of trade secrets rather the subsequent advertising, we conclude that Lawler's claim for unfair competition does not qualify as an offense committed in the course of advertising the goods in question. Accordingly, there is no coverage under the policies.

¶ 27.   Based upon the foregoing, the trial court is reversed and the cause remanded for the trial court to enter an order in conformity herewith.

*By the Court.*—Judgment reversed and cause remanded with directions.