422 N.W.2d 758 (1988)
MIDWEST FAMILY MUTUAL INSURANCE COMPANY, Appellant,
v.
AMCO INSURANCE COMPANY, et al., Respondents.
No. C4-87-2518.
Court of Appeals of Minnesota.
May 3, 1988.
Review Denied June 29, 1988.
*759 Daniel J. Roth, Austin & Roth, Minneapolis, for appellant.
Kay Nord Hunt, Thomas E. Peterson, Kathryn H. Davis, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondents.
Considered and decided by FORSBERG, P.J., FOLEY and NORTON, JJ.

OPINION
FORSBERG, Judge.
Midwest Family Mutual Insurance Company (Midwest) appeals the entry of summary judgment in favor of AMCO Insurance Company (AMCO). Midwest challenges the trial court's determination that Midwest's contribution action was barred by the failure of Midwest and Midwest's insured to notify AMCO of the settlement and release of the underinsured tortfeasor.

FACTS
On November 8, 1981, Renee Totzke was injured in a two car accident when Charles Eidem's pickup, in which Totzke was riding as a passenger, collided with a car driven by Tamara Moe. Following the accident, Totzke sued Moe, and then Moe brought a third-party claim against Eidem seeking contribution. Totzke also notified Midwest, her insurance carrier, that she intended to file a claim against the underinsured motorist (UIM) policy covering her uninvolved vehicle.
In 1982, American Family Insurance Company (American), Moe's liability insurance carrier, offered to pay Totzke $25,000, the liability limit of Moe's insurance policy, in exchange for settlement of Totzke's claims against Moe. Upon being informed of American's offer, Midwest initially refused either to allow Totzke to accept American's offer or to arbitrate Totzke's claim against itself. However, after being ordered by the trial court to arbitrate Totzke's claim, Midwest relented and gave Totzke permission to accept American's offer. Consequently, on September 26, 1983, Totzke executed a Pierringer release discharging Moe from further liability associated with the accident. At this point, AMCO, Eidem's UIM carrier, had not been informed of American's settlement offer by either Midwest or Totzke.
On October 16, 1984, the arbitrators ordered Midwest to pay Totzke $40,000. Midwest paid Totzke the entire award, despite becoming aware that Totzke's damages were also covered by AMCO's UIM policy on Eidem's pickup. On December 19, 1984, Midwest commenced the present action against AMCO, seeking contribution on the theory that AMCO's UIM policy was closer to the risk and was primary with respect to the UIM coverage.

ISSUES
1. Is the failure of Midwest and Midwest's insured to give AMCO 30-day notice *760 of settlement with the underinsured tortfeasor fatal to Midwest's claim for contribution?
2. Should Midwest's motion to strike portions of appellant's brief be granted?

ANALYSIS
Upon review of an order granting summary judgment, this court must determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. Betlach v. Wayzata Condominium, 281 N.W.2d 328, 330 (Minn.1979).
An underinsurer is entitled to 30 days' notice of a tentative settlement agreement and an opportunity to protect its potential subrogation rights by paying underinsurance benefits before release. Schmidt v. Clothier, 338 N.W.2d 256, 263 (Minn.1983). The remedy for failure to give the required Schmidt notice is forfeiture of an insured's right of action against the underinsurer for UIM benefits. Klang v. American Family Insurance Group, 398 N.W.2d 49, 52 (Minn.Ct.App.1986).
It is undisputed that AMCO did not receive notice of Totzke's pending settlement with the underinsured tortfeasor. However, Midwest argues that the present case is factually distinguishable from Schmidt and consequently, that Schmidt notice is not required. Midwest contends that previous cases requiring Schmidt notice have dealt with claims made by insureds against their own carriers, and that nothing in these cases extends the requirement of a Schmidt notice to claims made against another person's carrier. We disagree.
Midwest has failed to provide sufficient justification for the creation of an exception to the general rule requiring that UIM carriers be given 30-day notice of proposed settlement agreement between insureds and third-party tortfeasors. The reasons for requiring Schmidt notice apply equally whether the insurer is being asked to settle a claim brought by a policyholder or a non-policyholder.
We are unpersuaded by Midwest's contention that insurers paying claims brought by policyholders are somehow entitled to more protection than insurers paying claims brought by non-policyholders. In each case, the UIM insurer must be given notice of the tentative settlement in order to protect its subrogation rights.
We also reject Midwest's contention that requiring notification of unknown insurers places an inequitable burden on insureds. A far greater inequity would result from requiring insurers to actively protect themselves from all potential claims or risk losing their subrogation rights. Whether bringing an action as a policyholder or nonpolicyholder, the insured is in the best position to notify the insurer of a tentative settlement reached with an uninsured tortfeasor.
Since Midwest's contribution action against AMCO is barred, we need not reach the issue of apportionment, nor decide whether AMCO or Midwest had the primary policy.
Finally, Midwest's appendices contain information that was not before the trial court.
The papers filed in the trial court, the exhibits, and the transcript of the proceeding, if any, shall constitute the record on appeal in all cases.
Minn.R.Civ.App.P. 110.01. AMCO's motion to strike is granted.

DECISION
Affirmed.