FLUOROWARE, INC., Respondent,

v.

CHUBB GROUP OF INSURANCE COM-PANIES, et al., Defendants (C3–95–1809), Appellants (CX–95–1810),

United States Fire Insurance Company, Appellant (C3–95–1809),

Crum & Forster Insurance Organizations, et al., Defendants (CX–95–1810).

Nos. C3–95–1809, CX–95–1810.

Court of Appeals of Minnesota.

April 2, 1996.

Mark R. Geier, Dunkley, Bennett & Christensen, Minneapolis, for Respondent Fluoroware, Inc.

Dale M. Wagner, Moss & Barnett, Minneapolis, for Appellants Chubb Group of Insurance Companies and Great Northern Insurance Company.

Eric J. Magnuson, Jeanne H. Unger, Rider, Bennett, Egan & Arundel, Minneapolis, for Appellant United States Fire Insurance Company and Defendant Crum & Forster Insurance Organizations.

David A. Gauntlett, Gauntlett & Associates, Irvine, CA, for Amicus Curiae Gauntlett & Associates.

William C. Morison–Knox, Thomas Holden, Sonnenschein, Nath & Rosenthal, San Francisco, CA, for Amicus Curiae Travelers Indemnity Company.

Jeffrey I. Ross, Terese S. Wallschlaeger, Zelle & Larson, Minneapolis, for Amicus Curiae Travelers Indemnity Company.

Michael D. Madigan, Johnson & Madigan, Minneapolis, for Amicus Curiae United Policyholders of America.

Eugene R. Anderson, William G. Passannante, Anderson, Kill, Olick & Oshinsky, P.C., New York City , for Amicus Curiae United Policyholders of America.

Considered and decided by
KALITOWSKI, P.J., and SHORT and
MANSUR, JJ.

## OPINION

MANSUR, Judge.*

Respondent Fluoroware, Inc. (Fluoroware) brought this declaratory judgment action against Chubb Group of Insurance Companies (Chubb), Crum & Forster Insurance Organizations (Crum & Forster), Great Northern Insurance Company (Great Northern), and United States Fire Insurance Company (U.S. Fire), seeking a declaration that said insurance companies were obligated to defend and indemnify respondent against a patent infringement suit brought by Empak,

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Inc. (Empak). On cross-motions for summary judgment, the district court granted respondent's motion in part and ordered appellants to defend the Empak suit. The district court, having answered the question in the affirmative, certified the question of whether "advertising injury" provisions arguably encompass a patent infringement claim. We reverse.

## FACTS

Respondent seeks defense coverage for a dispute over the manufacturing, using, selling and distributing of plastic disk packages that allegedly infringe a patent owned by Empak. In August 1993, Empak filed a complaint against respondent alleging one count of infringing a disk package patent:

> 5. [Fluoroware] is commercially exploiting the invention disclosed in the '382 Patent by manufacturing, using, selling and distributing various disk packages as described in the '382 Patent. * * *
>
> 6. Fluoroware, with full knowledge of Empak's rights in and to the '382 Patent, has continued to make, use or sell the invention claimed in the '382 Patent, thereby infringing the '382 Patent. Fluoroware has actively induced infringement of the '382 patent and contributorily infringed the '382 patent.

Respondent tendered the defense and indemnification of the underlying Empak action to Chubb, Crum & Forster, Great Northern, and U.S. Fire.

Great Northern insured respondent under a domestic commercial general liability policy and an international commercial liability policy from September 1992 to September 1993. The domestic policy provided coverage for "advertising injury" claims, and defined the scope of coverage:

> [Advertising injury] means injury arising solely out of one or more of the following offenses committed in the course of advertising your goods, products or services:
>
> 1. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

> 2. oral or written publication of material that violates a person's right of privacy;
>
> 3. misappropriation of advertising ideas or style of doing business; or
>
> 4. infringement of copyrighted advertising materials, titles or slogans.

Great Northern's international policy contained similar provisions, but it provided a longer list of offenses for purposes of defining advertising injury:

> **Advertising injury** means arising out of an offense committed during the policy period occurring in the course of the **"named" insured's** advertising activities if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition or infringement of copyright title or slogan.

U.S. Fire also issued respondent a commercial umbrella policy from September 1992 to September 1993 that provided coverage above the primary policies issued by Great Northern. That policy also covered "Advertising Injury" that "arises out of" advertising activities. The four advertising offenses listed under the definition of advertising injury in the U.S. Fire policy mirror those contained in Great Northern's domestic policy.

Respondent asked the district court to find that appellants had a duty to defend and indemnify respondent in Empak's patent infringement suit pursuant to the advertising liability provisions of their commercial general liability policies. The district court granted respondent's motion for summary judgment in part, finding that appellants were obligated to defend respondent because Empak's claims arguably fell within the coverage afforded by appellants' policies. Subsequently, the district court certified the issue as important and doubtful under Minn.R.Civ. App.P. 103.03(h), and framed the question as follows:

> Is a claim for patent infringement arguably within the scope of coverage provided under the relevant "advertising injury"/"advertising activity" sections of a CGL (commercial/comprehensive general liability) policy, triggering an insurance carrier's duty to defend in an underlying patent infringement action?

The district court answered the question in the affirmative and the insurers appeal from the entry of summary judgment.

## ISSUES

I. Is a patent infringement claim arguably within the scope of advertising liability provisions that cover damages due to "advertising injury?"

II. Should exhibits in the amicus briefs of Gauntlett & Associates and United Policyholders of America be stricken?

## ANALYSIS

■■■ On appeal from summary judgment, we must determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). In doing so, we must view the evidence in a light most favorable to the party against whom the motion was granted. *State by Cooper v. Hennepin County*, 441 N.W.2d 106, 109 (Minn.1989). Interpretation of an insurance policy presents a question of law which we review de novo. *Sphere Drake Ins. Co. v. Tremco, Inc.*, 513 N.W.2d 473, 477 (Minn. App.1994), *review denied* (Minn. Apr. 28, 1994).

### I. Duty to Defend

■■■ An insurer's obligation to defend is contractual in nature and is generally determined by the allegations of the complaint against the insured and the indemnity coverage afforded by the policy. *Republic Vanguard Ins. Co. v. Buehl*, 295 Minn. 327, 332, 204 N.W.2d 426, 429 (1973). An insurer has an obligation to defend a claim against the insured when the claim falls "arguably" within coverage afforded by the policy. *Johnson v. AID Ins. Co.*, 287 N.W.2d 663, 665 (Minn. 1980). The complaint, however, does not control when actual facts clearly establish the existence or nonexistence of the duty to defend. *Bituminous Casualty Corp. v. Bartlett*, 307 Minn. 72, 75, 240 N.W.2d 310, 312 (1976), *overruled in part on other grounds by Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 391 (Minn.1979). The court must not read an ambiguity into the plain language of a policy in order to create coverage where none otherwise exists. *Id.*

■■■ Appellants contend that the advertising liability provisions do not arguably cover the injury alleged by Empak and that they have no corresponding duty to defend. We agree. Recently, this court applied a three-pronged test to determine whether "advertising injury" coverage creates a duty to defend. *Polaris Indus. v. Continental Ins. Co.*, 539 N.W.2d 619, 621–23 (Minn.App.1995), *review denied* (Minn. Jan. 25, 1996). The court evaluated (1) whether the advertising activity was a direct or proximate cause of the alleged injury; (2) whether the injury fell within the scope of the policy's definition of "advertising injury"; and (3) whether any policy exclusions apply. *Id.* In this case, respondent has not met the first two requirements, and appellants have no duty to defend.

### A. Injury in the course of advertising.

In concluding that Empak's underlying infringement claim arises from respondent's advertising activity, the district court relied on a federal case interpreting a similar advertising injury provision and holding that the advertising need not be the proximate cause of the alleged injury. *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 696 F.Supp. 434, 440 (D.Minn.1988), *aff'd*, 929 F.2d 413 (8th Cir.1991). But *Polaris* requires a showing of direct causation between advertising and the claimed injury to trigger liability coverage. 539 N.W.2d at 622; *see also Associated Indep. Dealers, Inc. v. Mutual Serv. Ins. Cos.*, 304 Minn. 179, 182, 229 N.W.2d 516, 518 (1975) ("[T]he policy term 'arising out of' means 'originating from,' or 'having its origins in,' 'growing out of,' or 'flowing from.'"). *Polaris* explains why advertising liability coverage does not result inevitably from infringement claims merely because a product is advertised:

> [A] less stringent test would allow any injury to be treated as an advertising injury if the underlying conduct is simply advertised in some manner.

This interpretation matches an insured's reasonable expectation that advertising-injury coverage should apply to injuries from

advertising, rather than injuries arising out of other activities that coincidentally were advertised. *See Atwater Creamery Co. v. Western Nat'l Mut. Ins.,* 366 N.W.2d 271, 278 (Minn.1985) (expectations of coverage must be reasonable under the circumstances). That misappropriated information is later advertised, does not, by itself, trigger advertising injury coverage under the policy. If it did the advertising-injury coverage would extend the policy to cover any tortious act, such as products liability, personal injury, or errors or omissions, as long as the alleged harm was advertised in some manner. To allow the policy to be extended in this way would unacceptably distort the relationship between the premiums and the risk.

539 N.W.2d at 622. In this case, the patent infringement alleged by Empak was not "committed in the course of advertising" and did not "arise out of" respondent's advertising activity. Under *Polaris,* there is no liability coverage and no corresponding duty to defend.

**B. Scope of "advertising injury".**

■ In order to fall within the definition of "advertising injury" under the advertising liability provisions, the underlying claim must arguably constitute an offense listed in the policy. *See Polaris,* 539 N.W.2d at 623 (claim that insured violated the Colorado Consumer Protection Act arguably falls within the scope of the policy's advertising-injury coverage for unfair competition arising out of advertising activities); *see also Brown v. State Auto. & Casualty Underwriters,* 293 N.W.2d 822, 825–26 (Minn.1980) (when allegations in complaint were broad enough to include claim arguably within terms of policy coverage, insurer had duty to defend). The district court, however, failed to specify which of the offenses listed in the policies patent infringement encompasses. The district court merely relied on *John Deere,* where the court held that the insured's alleged "misappropriation of trade secrets" arguably fell within the scope of coverage even though the offense was not listed under the policy definition of advertising injury. 696 F.Supp. at 440. That case is distinguishable because there, the underlying complaint included several allegations in addition to patent infringement and the court did not find coverage on the basis of patent infringement. *Id.* at 436, 440.

■ Respondent has failed to make a prima facie showing that the advertising liability provisions arguably encompass the alleged patent infringement. Respondent claims the patent infringement claim arguably falls within the scope of "misappropriation of advertising ideas or style of doing business," an offense listed both in Great Northern's domestic policy and the policy issued by U.S. Fire. We disagree. Misappropriation of advertising ideas or style of doing business is not ambiguous because it is defined by case law and common usage. *Atlantic Mut. Ins. Co. v. Badger Medical Supply Co.,* 191 Wis.2d 229, 528 N.W.2d 486, 489 (Ct.App. 1995). "Misappropriation of advertising ideas" has been defined as the wrongful taking of another's manner of advertising. *Ross v. Briggs & Morgan,* 520 N.W.2d 432, 435–36 (Minn.App.1994) (citing *J.A. Brundage Plumbing & Roto–Rooter, Inc. v. Massachusetts Bay Ins. Co.,* 818 F.Supp. 553, 557 (W.D.N.Y.1993), *vacated on other grounds,* 153 F.R.D. 36 (W.D.N.Y.1994)), *rev'd on other grounds,* 540 N.W.2d 843 (Minn.1995); *see also Merchants Co. v. American Motorists Ins. Co.,* 794 F.Supp. 611, 619 (S.D.Miss. 1992) (finding coverage based on "misappropriation of advertising ideas" when competitor sent direct mail solicitations to everyone on improperly acquired client list). Further, the phrase "style of doing business" has been used to refer to "a company's comprehensive manner of operating its business." *St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Sys., Inc.,* 824 F.Supp. 583, 585 (E.D.Va.1993), *aff'd,* 21 F.3d 424 (4th Cir. 1994). The *Advanced* case illustrates why the misappropriation offense cannot be interpreted to encompass patent infringement here:

Patent infringement involving only the patents used in the manufacture of a single device does not even approach the showing of pervasive similarity in the overall manner of doing business that courts have previously recognized as necessary to suc-

cessfully prove misappropriation of a "style of doing business."

\* \* \* \* \* \*

[I]t is nonsense to suppose that if the parties had intended the insurance policy in question to cover patent infringement claims, the policy would explicitly cover infringements of "copyright, title or slogan," but then include patent infringement, *sub silentio*, in a different provision, by reference to "unauthorized taking of \* \* \* [a] style of doing business."

824 F.Supp. at 585–86.

Respondent argues that the definition of "trade dress" supports coverage for the underlying patent infringement claim. *See Badger*, 528 N.W.2d at 490 (stating misappropriation of style of doing business is the same as infringement of trade dress). The Supreme Court has defined "trade dress" as the total image of a product or business, explaining that it "may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n. 1, 112 S.Ct. 2753, 2755 n. 1, 120 L.Ed.2d 615 (1992). A style of doing business could qualify for protection as trade dress, but only if it is inherently distinctive or has acquired distinctiveness, and only if there is a likelihood of confusion. *Id.* at 767–71, 112 S.Ct. at 2757–58. Here, respondent's trade dress cannot qualify as an advertising offense because Empak has not alleged any confusion among consumers in distinguishing between the two companies' shipping packages.

Respondent contends that a patent infringement claim may be covered by the "unfair competition" clause of the advertising liability provisions because an infringement claim can be amended easily to include an unfair competition claim. In *Polaris*, we found that the allegation of a violation of the Colorado Consumer Protection Act in the underlying complaint arguably falls within the scope of the policy's advertising-injury coverage for unfair competition arising out of advertising activities. 539 N.W.2d at 623. In that case, however, the insured publicly announced production of "the industry's first" electronic fuel-injected snowmobiles,

and the court explained that a public misrepresentation about a product's invention is within the ordinary and usual meaning of unfair competition. *Id.* at 621–23. *Polaris* does not control our decision because (1) there, we found policy coverage based on the alleged violation of the CCPA rather than the allegation of patent infringement; and (2) here, Empak made no claim that respondent misrepresented the origins of the disk package invention.

■ Respondent claims patent infringement can be equated to "piracy," an offense listed under the definition of advertising injury in Great Northern's international policy. Respondent relies on *Union Ins. Co. v. Land & Sky, Inc.*, 247 Neb. 696, 529 N.W.2d 773, 777 (1995), where the court found the term "piracy" ambiguous. That court, however, focused on the fact that the excess policy contained an express exclusion for patent infringement, but the primary policy did not. *Id.* The *Land & Sky* court specifically distinguished these facts from *Atlantic Mut. Ins. Co. v. Brotech Corp.*, 857 F.Supp. 423, 428 (E.D.Pa.1994), aff'd 60 F.3d 813 (3rd Cir.1995). *Land & Sky*, 529 N.W.2d at 777. In holding that the term "piracy" did not reasonably encompass patient infringement, the *Brotech* court explained:

> The issue is not what the isolated term "piracy" could mean, but what "piracy" occurring in the course of advertising activity reasonably could mean. Placed in context, the intended meaning of the language is clear. "In the context of policies written to protect against claims of advertising injury, 'piracy' means misappropriation or plagiarism found in the elements of the advertisement itself—in its text form, logo, or pictures—rather than in the product being advertised." *See Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1506–07 (9th Cir.1994).

857 F.Supp. at 428. Similarly, another court stated it is "absurd to suggest that 'piracy' and 'unfair competition' encompass any form of patent infringement." *Gencor Indus., Inc. v. Wausau Underwriters Ins. Co.*, 857 F.Supp. 1560, 1565 (M.D.Fla.1994).

## II. Amicus briefs

Great Northern challenges the admission of exhibits included in amicus briefs submitted by Gauntlett and Associates (Gauntlett) and United Policyholders of America (United), arguing that the exhibits are not part of the appellate record pursuant to Minn.R.Civ.App.P. 110.01 and that judicial notice is inappropriate. We agree. This court will grant a motion to strike material in an appendix when that material was not presented to the district court. *Midwest Family Mut. Ins. Co. v. AMCO Ins. Co.*, 422 N.W.2d 758, 760 (Minn.App.1988), *review denied* (Minn. June 29, 1988). Moreover, Minn. R.Evid. 201 limits judicial notice to facts "not subject to reasonable dispute." Judicial notice is intended to expedite litigation by avoiding the time and expense of formally proving factual matters that can be established by "unquestionable sources of information." *State v. Halvorson*, 288 Minn. 424, 430, 181 N.W.2d 473, 476 (1970). The documents offered by Gauntlett and United are not conclusive on any relevant issue; thus, we strike those exhibits.

Great Northern also asks this court to strike Gauntlett's brief for failure to comply with Minn.R.Civ.App.P. 132.01 which requires briefs to be double-spaced and limits amicus briefs to 20 pages. Gauntlett's brief is 20 pages, but it contains 45 single-spaced footnotes. Gauntlett's attempt to circumvent the applicable page limits is improper, but Great Northern has not established that sanctions are appropriate. *See Semrad v. Edina Realty, Inc.*, 470 N.W.2d 135, 147–48 (Minn.App.1991) (declining to impose sanctions against parties who submitted brief with length in excess of applicable page limit), *rev'd in part on other grounds*, 493 N.W.2d 528 (Minn.1992). Great Northern's motion to strike Gauntlett's entire brief is denied.

## DECISION

The district court erred when it determined that Empak's patent infringement claim arguably fell within the scope of the advertising liability provisions of the commercial general liability policies. Respondent's alleged patent infringement did not constitute advertising injury and the alleged patent infringement did not arguably arise out of respondent's advertising activity. Because appellants have no obligation to defend Empak's suit against Fluoroware, we reverse the district court's order to defend and deny Fluoroware's motion for attorney fees on appeal. In addition, we grant Great Northern's motion to strike exhibits included in amicus briefs submitted by Gauntlett and United, but deny the motion to strike Gauntlett's entire brief.

**Reversed.**